Charles C. RANDOLPH, d/b/a Hardens Fried Chicken, Appellant,

v.

COLLECTRAMATIC, INC., Appellee.

No. 77–1413.

United States Court of Appeals, Tenth Circuit.

Submitted Nov. 15, 1978.

Decided Jan. 15, 1979.

Jesse L. Leeds, Muskogee, Okl., for appellant.

Thomas R. Brett and Roy C. Breedlove of Jones, Givens, Brett, Gotcher, Doyle & Bogan, Inc., Tulsa, Okl., for appellee.

Before McWILLIAMS, BARRETT and McKAY, Circuit Judges.

BARRETT, Circuit Judge.

Charles C. Randolph (Randolph) appeals from an order of the trial court granting a directed verdict to Collectramatic, Inc. (Collectramatic). Jurisdiction vests by reason of diversity.

Collectramatic is a manufacturer and distributor of pressure cookers intended for commercial use. In the fall of 1975, Collectramatic sold Randolph four new pressure cookers for use in his restaurant located in Muskogee, Oklahoma. The Collectramatic pressure cooker consists primarily of a metal reservoir which holds approximately 8 gallons of cooking oil. The reservoir sits atop four legs approximately 18 inches off the floor. Attached to the bottom of the reservoir is a cylindrical container, called a Collectramat, which extends downward to a point two inches from the floor. The Collectramat's function is to catch hot oil drippings from the cooking process. The Collectramat is attached to the reservoir by screwing it into place in a hole located at the bottom of the container. In order to assure that the Collectramat will not disengage and leak hot oil, a pin can be inserted into the machine which, when used properly, prevents the Collectramat from unscrewing.

On June 6, 1976, Randolph was using the Collectramatic pressure cookers when one of the cookers exploded causing hot oil to spew from the Collectramat injuring him.

On July 29, 1976, Randolph filed an action in state court seeking compensation from Collectramatic for injuries he allegedly sustained in the pressure cooker explosion. Randolph's complaint was premised on the theory that the pressure cooker was defectively designed and unreasonably dangerous in that it lacked proper warning devices and safety characteristics. The complaint also set up claims based upon the doctrines of negligence, warranty, and *res ipsa loquitur*.

Following service of summons, Collectramatic petitioned for removal to the United States District Court for the Eastern District of Oklahoma. The petition for removal was granted. Collectramatic answered Randolph's complaint by general denial of the allegations contained therein and by asserting various affirmative defenses. The case was set for jury trial on April 11, 1977. At that time, Randolph abandoned his negligence claim and chose to proceed to trial on the theory of manufacturers' products liability.

Following the presentation of Randolph's evidence, Collectramatic moved for a directed verdict which was granted by the court on April 13, 1977.

On appeal Randolph contends that the district court erred in (1) refusing to allow him to state his opinion (as a lay witness) as to what safety devices should have been incorporated into the design of the Collectramatic pursuant to Fed.Rules Evid. Rule 701, 28 U.S.C.A. and (2) granting Collectramatic's motion for a directed verdict.

### I.

Rule 701, *supra*, provides as follows:

Rule 701. Opinion testimony by lay witnesses

If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.

The primary purpose of Rule 701 is to allow nonexpert witnesses to give opinion testimony when, as a matter of practical necessity, events which they have personally observed cannot otherwise be fully presented to the court or the jury. *See,* Weinstein's Evidence ¶ 701[02] (1977). Generally, however, this rule does not permit a lay witness to express an opinion as to matters which are beyond the realm of common experience and which require the special skill and knowledge of an expert witness.

As stated in *Jones on Evidence* :

. . . . [I]t is not to be inferred that the opinions of ordinary witnesses are competent as to subjects which require special study and skill and which are proper for the testimony of the expert as distinguished from the ordinary witness . . . . 2 *Jones on Evidence*, § 14:3 (1972).

We recognize that at least one opinion has allowed a lay witness to state his opinion as to the safety of a particular design in a products liability case pursuant to Rule 701. *Farner v. Paccar, Inc.*, 562 F.2d 518 (8th Cir. 1977).

In *Farner* two truckdrivers were killed instantly when their truck veered out of its lane and crashed into a concrete column on Interstate 90 near Cle Elum, Washington. Jean Farner, as the administratrix of her husband's estate, brought an action alleging that Paccar negligently designed, tested and manufactured the truck's "air leaf" suspension system. At trial, testimony by a lay witness was admitted which indicated that the witness had personally observed several springs manufactured by Paccar break on his Peterbilt trucks prior to the installation of safety chains; that subsequent to this modification, another spring failure was experienced; and that the truck's axle was held in place by the safety chain thereby preventing a serious accident. The admission of the lay witness' opinion that the Paccar suspension system was improperly designed due to its failure to incorporate the safety chains was affirmed by the Court:

> Paccar also argues that there was insufficient foundation to permit Robert Curtis to give his opinion "on the proper design of suspension systems for trucks." This argument is without merit. The qualification of experts and the admission of opinion testimony lies within the sound discretion of the trial court. (Citations.) We agree with the trial court that Curtis, who had been in the trucking business almost thirty years and who, at the time of trial, controlled twelve tractors, five of them with Peterbilt tractors [a division of Paccar] with air leaf suspension systems,

could testify as to the *simple use of the safety chains* either as a lay witness speaking within his own knowledge and perception, *see* Fed.R.Evid. 701, or as an expert qualified by knowledge, experience or skill. (Citations.) (Emphasis supplied.) 562 F.2d at pp. 528, 529.

We need not decide whether this Court will follow the rule announced in *Farner v. Paccar, supra*, inasmuch as the *Farner* case is clearly distinguishable from the instant case on its facts.

In the case at bar, the testimony of Randolph indicated that he had previously worked in the fast food business for approximately five years and that, during that time, he had used pressure cookers of different types. He further testified, although in conclusory terms, that he knew how the pressure cooker machines were manufactured, what their component parts were, and how their systems operated. He stated that he had serviced, cleaned and operated pressure cooker machines similar to, and including, the one here involved. Finally, he stated that he considered himself an expert in the "knowledge and operation" of pressure cooker machines. Based on this foundation, Randolph would have testified, had the court so allowed, that the subject pressure cooker was defectively designed in that it lacked safety shields enclosing the bottom of the machine where the hot oil escaped.

■ The question of whether or not a lay witness is qualified to testify as to any matter of opinion is a preliminary determination within the sound discretion of the trial court whose decision must be upheld unless shown to be clearly erroneous or a clear result of an abuse of judicial discretion. *See: Cardwell v. Chesapeake & Ohio Railway Co.*, 504 F.2d 444, 448 (6th Cir. 1974); *Spitzer v. Stitchman*, 278 F.2d 402, 409 (2d Cir. 1960).

■ There is uniformity among the courts that the testimony of witnesses, both in civil and criminal cases, is admissible if predicated upon concrete facts within their own observation and recollection—that is

facts perceived from their own senses, as distinguished from their opinions or conclusions drawn from such facts. *United States v. Brown*, 540 F.2d 1048, 1053 (10th Cir. 1976), *cert. denied*, 429 U.S. 1100, 97 S.Ct. 1122, 51 L.Ed.2d 549 (1977); Wigmore on Evidence, 3rd Ed., Vol. VII, §§ 2078–2081; 31 Am.Jur.2d, Expert and Opinion Evidence, § 2.

■ There is no fixed or general rule that *requires expert testimony*. However, the rule does dictate that where the *topic* requires special experience, only the testimony of a person of that special experience will be received. Wigmore on Evidence, 3rd Ed., Vol. II, §§ 555, 556; Wigmore on Evidence, 3rd Ed., Vol. VII, § 2090. Even here, however, the admission of such testimony is within the sound discretion of the trial court. *United States v. Brown*, supra; *Wolford v. United States*, 401 F.2d 331 (10th Cir. 1968); Wigmore on Evidence, 3rd Ed., Vol. II, § 561; *Barnes v. Smith*, 305 F.2d 226 (10th Cir. 1962); *Bratt v. Western Air Lines*, 155 F.2d 850 (10th Cir. 1946), *cert. denied*, 329 U.S. 735, 67 S.Ct. 100, 91 L.Ed. 635 (1946). Thus, we observe, for purposes of spotlighting the "variables" involved in this area, that while persons of reasonable intelligence and ordinary experience are uniformly permitted to express opinions as to matters such as the speed of an automobile under their observation, in the instant case it is necessary that a qualified engineer or engineers testify relative to the feasibility of "shields" enclosing the bottom of the subject pressure cooker machine in terms of the safety and engineering aspects of their design.

■ Our review of the record demonstrates that the trial court did not err in excluding the proffered testimony of Randolph. No concrete facts were introduced to substantiate Randolph's claim that he knew how pressure cookers were manufactured or designed. No testimony was introduced establishing that Randolph was familiar with the "state of the art" of pressure cooker design at the time the subject pressure cooker was originally manufactured. No evidence was proffered or ad-

mitted concerning Randolph's knowledge of similar safety shields employed on other industrial pressure cookers prior to his injury. Moreover, there was no evidence admitted concerning Randolph's formal or informal training, other than his four to five years in the restaurant business, which qualified him to comment on the design of an admittedly technical and complex machine.

The trial court was most liberal in allowing Randolph to testify as to the manner in which the Collectramatic pressure cooker is operated. The trial court's denial of Randolph's request to state an opinion with regard to the design of the machine is further supported in recognition that plaintiff had listed two expert witnesses in his trial brief which he failed to put on the "stand."

II.

Randolph contends that the trial court erred in directing a verdict for Collectramatic at the close of his case. The rules for determining whether or not a trial court erred in granting a motion for directed verdict are succinctly stated in *Wylie v. Ford Motor Company*, 502 F.2d 1292 (10th Cir. 1974):

In determining whether a [directed] verdict should be granted, a trial judge must view the evidence in the light most favorable to the opposing party. A directed verdict must not be granted unless the evidence points all one way and cannot be the basis of reasonable inferences which sustain the position of the nonmoving party. (Citation.) Also the trial court, when considering a directed verdict motion, may not weigh the evidence or determine where the preponderance of evidence lies. The court should not consider the credibility of witnesses, and only clearly incredible evidence should be excluded from the court's consideration. (Citation.) 502 F.2d at p. 1294.

■ No evidence was presented concerning the defective design of the machine. Randolph produced no expert witnesses, and his opinion testimony on the design and

safety aspects of the Collectramatic pressure cooker was properly excluded. Nevertheless, Randolph contends that the introduction of the pressure cooker in evidence, combined with the explosion, constituted sufficient evidence of a defective and dangerous product dictating that the case be allowed to go to the jury. We disagree. The Supreme Court of Oklahoma in *Kirkland v. General Motors Corporation*, 521 P.2d 1353 (Okl.1974), stated:

> By our adoption of manufacturers' products liability with its comparison to liability without fault in such areas as workmen's compensation, respondeat superior, and vicious or fractious animals, etc., we do not infer that the injury is of itself proof of the defect, or that proof of injury shifts a burden to the Defendant. In *Lyons v. Valley View Hospital*, Okl., 341 P.2d 261 (1959), we said:
>
> > "Cases are legion in which we have held that the mere happening of an accident raises no presumption of negligence on the part of the defendant."
>
> Nor does it raise any presumption of defectiveness in the article involved in an accident. 521 P.2d at p. 1363.

The motion for directed verdict was, therefore, properly granted as to the issue of manufacturers' product liability.

■ Randolph argues that the court erred in granting a directed verdict under the doctrine of *res ipsa loquitur*. This argument is without merit. In *Briscoe v. Oklahoma Natural Gas Company*, 509 P.2d 126 (Okl.1973), the court stated:

> Before the doctrine of res ipsa loquitur may be invoked to justify the inference of negligence on the part of the defendant, the plaintiff must prove what caused the damage, and that the "thing" causing said damage was under the control and management of the defendant or his servants, since the doctrine does not go to the extent of implying that one may, from the mere fact of the injury, infer what physical acts produced the injury. (Citation.) 509 P.2d at p. 128.

The evidence establishes that the pressure cooker was under the control of the plaintiff, rather than the defendant as required by the doctrine.

In summary, there is no showing that the court erred in granting defendant's motion for directed verdict.

### III.

We have considered the remaining allegations of error and hold that they are individually and collectively without merit.

WE AFFIRM.