870 A.2d 609

**Jeffrey Louis RAGLAND, Jr.**

v.

**STATE of Maryland.**

**No. 52, Sept. Term, 2004.**

Court of Appeals of Maryland.

March 18, 2005.

---

708

Geraldine K. Sweeney, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), for appellant.

Steven L. Holcomb, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellee.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

RAKER, J.

Appellant Jeffrey Ragland was convicted of distribution of a controlled dangerous substance in violation of Md.Code (2002, 2003 Cum.Supp.), § 5–602 of the Criminal Law Article. At trial, two police officers offered "lay opinion" testimony, based on their training and experience, that a particular series of events had constituted a drug transaction. Ragland appeals, arguing that such evidence should only have been admitted as expert testimony, subject to the accompanying qualification and discovery procedures. We agree, and accordingly we shall vacate the conviction and remand the case for a new trial.

## I.

On the evening of March 18, 2003, members of the Montgomery County Police Special Assignment Team (SAT) observed witness Paul Herring, a man known to them from a prior drug arrest, make a call from a pay telephone at a Crown gas station in the Aspen Hill area of Montgomery County. Following this telephone call, Herring was observed returning to his van, in which he traveled a short distance to Northwest Drive, paused for a moment, and then drove to an Exxon gas station where he made another short call from a pay telephone.

Officers then observed Herring return to Northwest Drive, where a hand-to-hand transaction took place between Herring and the passenger of a yellow Cadillac which had parked on Northwest Drive during the interim between the two phone calls. The evening was dark, and no officer was able to see

either the face of the Cadillac passenger or the nature of any items that individual had exchanged with Herring. Officer Michael Bledsoe was able to discern that the Cadillac passenger was wearing a hat.

Both Herring's van and the Cadillac then left the area. Members of the SAT team stopped Herring's van and forced him to the ground. On the ground nearby, they recovered a small object which they suspected to be crack cocaine. Other members of the team stopped the yellow Cadillac and arrested its three occupants, including Appellant Jeffrey Louis Ragland. Ragland had been seated in the front passenger position, and was wearing a multicolor beret.[1] The police searched Ragland and they seized a folding pocket knife clipped to his belt, $24 in cash in his left front pants pocket, and $35 in cash in his right front pants pocket. No drugs or drug paraphernalia were found in the car or on Ragland's person, and, despite following the Cadillac closely from the scene of the exchange to the scene of Ragland's arrest, no officer observed any item thrown from the car.

Police seized two cellular telephones from the car. Detective Kenneth Halter later learned from telephone records that one of these cellular telephones had received both a ninety-five second call from the pay telephone at the Crown station, and a thirty-five second telephone call from the pay telephone at the Exxon station. The times of these calls corresponded to the approximate times at which officers had observed Herring place telephone calls from those locations.

Ragland was ·indicted by the Grand Jury for Montgomery County and charged with distribution of a controlled dangerous substance, to wit, cocaine. At trial, the State called Officer Bledsoe as a witness. The State had not notified the defense that Bledsoe would testify as an expert witness, nor did it proffer Bledsoe as an expert. The Court did not make any finding as to whether any testimony Bledsoe might offer

---

1. No evidence was introduced at trial as to whether either of the other two occupants was wearing a hat.

would satisfy the requirements of Maryland Rule 5–702[2] or the standards of *Frye v. United States,* 293 F. 1013 (D.C.Cir. 1923), as adopted in *Reed v. State,* 283 Md. 374, 391 A.2d 364 (1978). Officer Bledsoe testified as follows:

"[PROSECUTOR]: And have you received any training in investigation of drug crimes?

[OFC. BLEDSOE]: Yes. Several drug recognition courses and training at the police academy, and several seminars.

[PROSECUTOR]: And what's the most recent seminars that you've been to?

[OFC. BLEDSOE]: A narcotics instructor, who actually was a retired Montgomery County police officer and a narcotics detective, put on a drug school approximately a year ago at the training academy.

[PROSECUTOR]: And that's here in Montgomery County; right?

[OFC. BLEDSOE]: Yes.

[PROSECUTOR]: And you mentioned that you've been with [the SAT] for about two and a half years. Have you had any other assignments within the police department related to drug investigations?

[OFC. BLEDSOE]: Yes. During the fall of '99, I did a temporary assignment in our narcotics section for 90 days, approximately three months, and then in the spring/summer of year 2000 an additional 90–day temp with the narcotics unit."

After Bledsoe testified to his observations of the hand-to-hand transaction, the following ensued:

---

2. Md. Rule 5–702 provides as follows:

"Expert testimony may be admitted, in the form of an opinion or otherwise, if the court determines that the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. In making that determination, the court shall determine (1) whether the witness is qualified as an expert by knowledge, skill, experience, training, or education, (2) the appropriateness of the expert testimony on the particular subject, and (3) whether a sufficient factual basis exists to support the expert testimony."

"[PROSECUTOR]: Based on your training and experience—and this is a 'yes' or 'no' question—was the activity that you observed in the street there at Northwest Drive of significance to you? Just 'yes' or 'no.'

[OFC. BLEDSOE]: Yes.

[PROSECUTOR]: And what did you believe had occurred?

[DEFENSE COUNSEL]: Objection, Your Honor. May we approach?

THE COURT: Yes.

(Whereupon, a bench conference follows:)

[DEFENSE COUNSEL]: Your Honor, I've not received any notice that anyone other than the chemist is testifying as an expert. What the State is trying to elicit is an opinion based upon training and experience in narcotic—in investigating narcotics crimes.

THE COURT: Well, he's not—he's asking him an opinion question, I think. Mr. [Prosecutor]—

[PROSECUTOR]: Yes. It's not an expert opinion. That's what we elicited at the start, is that he brings to this like a mechanic who works on Mercedes, brings special knowledge about Mercedes. He brings special knowledge about drug deals and what these things bring. So I'm asking him what's his opinion of what occurred.

THE COURT: I'm going to permit the answer over objection.

(Whereupon, the bench conference concluded.)

[PROSECUTOR]: Officer, can you give us your opinion of what occurred on that deal or on that encounter on the street?

[OFC. BLEDSOE]: In my opinion what occurred was the drug transaction.

[PROSECUTOR]: And that opinion is based on what?

[DEFENSE COUNSEL]: Objection.

THE COURT: Overruled.

[OFC. BLEDSOE]: Based on two temporary assignments in a narcotics unit; two and a half years with this unit;

involved in well over 200 drug arrests. And many times when we arrest these people we obtain—

[DEFENSE COUNSEL]: Objection.

THE COURT: Sustained.

[OFC. BLEDSOE]: Okay.

[PROSECUTOR]: In the course of your work—I approached you about this matter earlier—but in the course of your work in your temporary assignment within the narcotics division, did you, yourself, participate in arranging purchases of drugs?

[DEFENSE COUNSEL]: Objection.

THE COURT: Overruled.

[OFC. BLEDSOE]: Yes.

[PROSECUTOR]: Any similarities to what you observed on this evening to what you, yourself, did in your role with the narcotics division?

[DEFENSE COUNSEL]: Objection.

THE COURT: Okay. I'm going to sustain that.

[PROSECUTOR]: Thank you, Your Honor. I believe that's all the questions I have at this time for him."

The State called Detective Kenneth Halter as a witness. Halter was never proffered or qualified as an expert witness, nor did the court make findings under Rule 5–702. Over defense objection, the State elicited testimony about Halter's training and experience in the investigation of narcotics cases. According to Halter, he had earned a degree in criminal justice, had attended Police Academy courses and numerous seminars, and had participated in over 250 drug arrests and investigations. The following then transpired:

"[PROSECUTOR]: Why were you interested in the yellow Cadillac? What did you believe had occurred while on Northwest Drive?

[DEFENSE COUNSEL]: Objection.

THE COURT: What is the basis?

[DEFENSE COUNSEL]: I think it calls for—it is reference to hearsay and it is—

THE COURT: It is not a hearsay objection. I will caution the jury, but it is admissible.

[DEFENSE COUNSEL]: Your Honor, I think he also— may we approach?

THE COURT: No. Just tell me your reason.

[DEFENSE COUNSEL]: Your Honor, he did not personally observe anything that—

THE COURT: I know that. It is based on hearsay, but it is admissible.

[DEFENSE COUNSEL]: It is based on hearsay.

THE COURT: Okay. Ladies and gentlemen, the testimony the witness is about to offer is information he learned from someone else. However, it forms the basis upon which he took his actions.

In other words, why he did what he did. You are to receive the testimony simply because it forms the basis of why this particular witness took actions, not for the truth of whether or not what he describes actually took place but only because it forms the basis or impetus for him to act. Next question.

[PROSECUTOR]: Your Honor, actually,—

THE COURT: You may continue this question.

[PROSECUTOR]: What I am asking for is under 5–701, an opinion of a lay witness. That is what I am asking for.

THE COURT: I have already ruled on that.

[PROSECUTOR]: Detective, in your opinion, what occurred on that street?

[DET. HALTER]: I believe that a drug transaction had occurred."

The State also called Paul Herring as a witness at trial.[3] Herring testified that he had telephoned Ragland, whom he knew as "J," and arranged to meet him on Northwest Drive

---

3. Herring entered into a plea agreement with the State, under which he would receive a sentence of probation for possession of a controlled dangerous substance in exchange for his testimony at the trial of Ragland.

for the purpose of purchasing crack cocaine. He identified Ragland as the man he knew as "J" and as the man he had met on Northwest Drive that evening. He testified that Ragland had broken off a small rock of crack cocaine from a larger rock, and had sold Herring the smaller rock.

Herring admitted to having previously falsified a police report in Prince George's County. In that incident, Herring had claimed to have been the victim of an armed carjacking because he wanted police assistance in recovering a car he had lent to a drug dealer. On cross-examination, Herring acknowledged that he "didn't have a problem" with lying to get what he wanted.

In his closing argument, the prosecutor referred to nine pieces of evidence which he suggested demonstrated Ragland's guilt. He then argued:

"What is the last factor that supports all of these things coming together to show that the defendant in this case is guilty of a drug transaction is the knowledge and the training and the experience that these police officers brought.

\* \* \*

You heard those officers testify they believed a drug deal occurred because of all these factors. Taking all ten of these factors together, I submit to you that the evidence is overwhelming that this was a drug deal."

Ragland was convicted of cocaine distribution, and sentenced to a term of fifteen years incarceration, all but eight years suspended, followed by five years supervised probation. He noted a timely appeal to the Court of Special Appeals. Before that court could consider the case, we issued a Writ of Certiorari on our own initiative. *Ragland v. State,* 382 Md. 688, 856 A.2d 724 (2004).

## II.

Before this Court, Ragland argues that when the detectives testified that they believed the events in question constituted a

drug transaction, they expressed expert opinions. He contends that their testimony was inadmissible because the State had not identified Bledsoe and Halter as experts pre-trial, had not provided appropriate discovery under Md. Rule 4–263(b)(4),[4] and had not qualified them as experts at trial pursuant to Md. Rule 5–702.

The issue presented in this case lies at the intersection of two Maryland evidentiary rules governing opinion testimony. That issue is as follows: Where a witness has first-hand knowledge of the events that form the subject of his or her testimony, may the witness offer, as "lay opinion testimony," opinions formed about those events based on specialized knowledge, skill, experience, training, or education?

Ragland argues that Bledsoe and Halter's testimony characterizing the nature of the transaction that they had viewed as a "drug transaction" was expert testimony and that the trial court erred in admitting the testimony as lay opinion testimony. We agree.

▪ Under Maryland Rule 4–263(b), upon request of the defendant, the State must disclose to the defendant the name and address of each person the State intends to call as a witness at trial to establish its case in chief or to rebut alibi. Also, upon request, Rule 4–263(b)(4) requires the State to produce and permit a defendant to inspect and copy all written reports or statements made in connection with the action by each expert consulted by the State and furnish the defendant with the substance of any oral report and conclu-

---

4. Md. Rule 4–263, Discovery in circuit court, provides, in pertinent part:

(b) Disclosure upon request. Upon request of the defendant, the State's Attorney shall:

\*　　\*　　\*

(4) Reports or statements of experts. Produce and permit the defendant to inspect and copy all written reports or statements made in connection with the action by each expert consulted by the State, including the results of any physical or mental examination, scientific test, experiment, or comparison, and furnish the defendant with the substance of any such oral report and conclusion.

sion. The purpose of this Rule is to assist the defendant in preparing his or her defense, and to protect the defendant from surprise. *Hutchins v. State*, 339 Md. 466, 473, 663 A.2d 1281, 1285 (1995).

Maryland Rule 5–702, Testimony by experts, provides as follows:

"Expert testimony may be admitted, in the form of an opinion or otherwise, if the court determines that the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. In making that determination, the court shall determine (1) whether the witness is qualified as an expert by knowledge, skill, experience, training, or education, (2) the appropriateness of the expert testimony on the particular subject, and (3) whether a sufficient factual basis exists to support the expert testimony."

Maryland Rule 5–701, Opinion testimony by lay witnesses, provides as follows:

"If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue."

The language of the two Rules thus divides the universe of opinion testimony into two categories, each bearing restrictions that the other does not.

Expert opinion testimony is testimony that is based on specialized knowledge, skill, experience, training, or education. Expert opinions need not be confined to matters actually perceived by the witness. Lay opinion testimony is testimony that is rationally based on the perception of the witness. The United State Court of Appeals for the Third Circuit offered a helpful explanation of lay opinion testimony in *Asplundh Mfg. Div. v. Benton Harbor Eng'g*, 57 F.3d 1190 (3rd Cir.1995), a case cited favorably in the Advisory Commit-

tee's note to the 2000 amendment to Fed.R.Evid. 701, discussed *infra.* The court stated as follows:

"The prototypical example of the type of evidence contemplated by the adoption of Rule 701 relates to the appearance of persons or things, identity, the manner of conduct, competency of a person, degrees of light or darkness, sound, size, weight, distance, and an endless number of items that cannot be described factually in words apart from inferences.... Other examples of this type of quintessential Rule 701 testimony include identification of an individual, the speed of a vehicle, the mental state or responsibility of another, whether another was healthy, the value of one's property."

*Id.* at 1196–98.

This bisection is imperfect, however, because at least one class of opinions potentially falls within both categories. A witness who has personally observed a given event may nonetheless have developed opinions about it that are based on that witness's specialized knowledge, skill, experience, training, or education. The question then becomes whether the fact of personal observation will permit admission of the opinion by a lay witness under Rule 5–701, or whether the "expert" basis of the opinion will require compliance with Rule 5–702 and admission as expert testimony.

We addressed the issue of lay witness testimony in *Robinson v. State,* 348 Md. 104, 702 A.2d 741 (1997), and held that the trial court had abused its discretion in permitting police officers to testify that a substance observed by them was in fact cocaine. *Id.* at 129, 702 A.2d at 753. We reasoned that, based on their training and experience, the troopers drew the common sense inference that the substance Robinson swallowed looked like crack cocaine. The further conclusion expressed by the troopers that the substance was in fact cocaine was not rationally and reasonably certain because the visual characteristics of crack cocaine are not unique to that substance alone. Our holding was based on our conclusion that the opinions did not satisfy the requirements of personal

knowledge, rational connection, and helpfulness to the trier of fact as set out in Rule 5–701. *Id.* at 121, 702 A.2d at 749. Our reasoning in *Robinson* appears to have proceeded from the premise that lay opinion testimony could properly be based on the specialized knowledge or experience of the witnesses.

In expressing this proposition, we relied on four Maryland cases. *See Ricks v. State,* 312 Md. 11, 31–32, 537 A.2d 612, 621–22, *cert. denied,* 488 U.S. 832, 109 S.Ct. 90, 102 L.Ed.2d 66 (1988) (permitting police detective to identify individuals on surveillance tape as defendants);[5] *Scott v. John H. Hampshire, Inc.,* 246 Md. 171, 176–77, 227 A.2d 751, 754 (1967) (permitting former naval construction worker to offer lay opinion as to safety of various methods of crane operation, based on prior experiences and observations in the operation of cranes); *Ager v. Baltimore Transit,* 213 Md. 414, 419–20, 132 A.2d 469, 472 (1957) (permitting experienced ambulance attendant to offer lay opinion testimony that accident victim was "feigning" injury); *Tu v. State,* 97 Md.App. 486, 500–01, 631 A.2d 110, 117 (1993), *aff'd on other grounds,* 336 Md. 406, 648 A.2d 993 (1994) (permitting police detective to offer opinion on meaning of blood spatter pattern, based on training and experience investigating gun homicides). With reference to *Ricks* and *Tu,* we stated:

> "Maryland courts have recognized that the specialized training, experience, and professional acumen of law enforcement officials often justify permitting a police officer to offer testimony in the form of lay opinion. To restrict such testimony to underlying factual observations would often deprive the trier of fact of the necessary benefit of the

---

**5.** In retrospect, our reliance on *Ricks* as an example of police lay opinion testimony may have been somewhat misplaced. The detective in that case made his identification of the defendants as the videotape was being shown in court. He was testifying not so much to an opinion as to his present experience of recognizing individuals based on prior contacts. His testimony was thus not based on any particular experience or expertise in identifying persons from videotapes generally, but rather upon his personal familiarity with the defendants. Indeed, the relevant portion of *Ricks* never mentions the word "opinion," lay or otherwise.

percipient mind's prior experiences. In those circumstances, these prior experiences would be a *sine qua non* to a full understanding of the underlying factual data."

*Robinson,* 348 Md. at 120, 702 A.2d at 748–49 (citations omitted).

Each of these four cases was decided before the 1994 adoption of Maryland Rules 5–701 and 5–702. Implicit in the reasoning of *Robinson,* then, was our acceptance that Rules 5–701 and 5–702 had not altered the criteria for admission of lay opinions as developed in prior case law.

■ Later developments now cause us to revisit this aspect of *Robinson.* We noted in *Robinson* that, except for minor stylistic changes, Rule 5–701 was identical to the then-current Federal Rule of Evidence 701. *Robinson,* 348 Md. at 118, 702 A.2d at 747. Because of this identity between the two rules, judicial decisions construing Fed.R.Evid. 701 often provide persuasive authority for the interpretation of Md. Rule 5–701. *See Perry v. State,* 381 Md. 138, 145–46, 848 A.2d 631, 635 (2004); *Beatty v. Trailmaster,* 330 Md. 726, 738 n. 8, 625 A.2d 1005, 1011 n. 8 (1993).

A review of the federal cases interpreting the relevant federal rules reveals that the question of whether a particular witness must be designated as an expert and qualified as such in order to testify about a particular subject has been the subject of debate and disagreement among the federal courts. The more narrow view required that a witness whose testimony could be admitted as expert testimony under Federal Rule 702 *must* be qualified and received as an expert before the testimony may be admitted. *See Certain Underwriters at Lloyd's, London v. Sinkovich,* 232 F.3d 200, 203 (4th Cir.2000) (holding that Fed.R.Evid. 701 does not permit a lay witness to testify about matters that are predicated necessarily on "some specialized knowledge or skill or education that is not in the possession of the jurors"); *Randolph v. Collectramatic,* 590 F.2d 844, 846 (10th Cir.1979) (holding that Fed.R.Evid. 701 does not permit a lay witness to express an opinion as to matters that are beyond the realm of common experience and

that require the special skill and knowledge of an expert witness). The rationale underlying this narrow approach is that lay witnesses may testify regarding their direct perceptions of events but that opinions or inferences that rely on scientific, technical, or specialized knowledge must be excluded unless the witness is qualified as an expert.

For example, in *United States v. Figueroa–Lopez,* 125 F.3d 1241 (9th Cir.1997), the court found error in the admission, as lay opinion, of a police officer's testimony that he had observed the defendant behaving in the manner of "an experienced narcotics trafficker." The court reasoned as follows:

"The Government's argument simply blurs the distinction between Federal Rules of Evidence 701 and 702. Lay witness testimony is governed by Rule 701, which limits opinions to those 'rationally based on the perception of the witness.' Rule 702, on the other hand, governs admission of *expert* opinion testimony concerning '*specialized* knowledge.' The testimony in this case is precisely the type of 'specialized knowledge' governed by Rule 702. A holding to the contrary would encourage the Government to offer all kinds of specialized opinions without pausing first properly to establish the required qualification of their witnesses. The mere percipience of a witness to the facts on which he wishes to tender an opinion does not trump Rule 702.

\* \* \*

In addition, the Government's argument subverts the requirements of Federal Rule of Criminal Procedure 16(a)(1)(E) [requiring discovery of expert testimony that government intends to introduce during its case-in-chief]." *Id.* at 1246.

The more liberal or broad view holds that lay witness testimony may include opinions predicated on specialized knowledge or training so long as the testimony is rationally based on the personal perception of the witness. *See, e.g., United States v. Riddle,* 103 F.3d 423, 428–29 (5th Cir.1997) (holding bank examiner's opinion that defendant had engaged in self-dealing admissible under Fed.R.Evid. 701, but nonethe-

less reversing on finding that examiner's other testimony about "sound banking practices in the abstract" exceeded scope of the Rule); *Burlington N. R.R. Co. v. Nebraska,* 802 F.2d 994, 1004 (8th Cir.1986) (approving, as lay opinion, testimony of railroad executives "that, in their experience, trains with cabooses were no safer than cabooseless trains"); *Soden v. Freightliner Corp.,* 714 F.2d 498, 510–12 (5th Cir.1983) (holding that where experienced mechanic had personally observed aftermath of several truck accidents, he was permitted under Fed.R.Evid. 701 to testify to opinion that particular design feature had caused the accidents and generally was dangerous); *United States v. Sweeney,* 688 F.2d 1131, 1145 (7th Cir.1982) (admitting lay opinion of experienced methamphetamine user that substance in question was methamphetamine).

The issue was settled in 2000, when Congress amended Fed.R.Evid. 701 to address expressly the concerns and debate about the meaning of the rules. Before the amendment, the texts of Fed.R.Evid. 701 and 702 did not address the question of whether lay witnesses could express opinions on those subjects that would require specialized knowledge or training. Following the 2000 amendment, Fed.R.Evid. 701 expressly states that lay witnesses may not offer testimony that is "based on scientific, technical or other specialized knowledge within the scope of Rule 702." The Advisory Committee's note to Rule 701 states that "Rule 701 has been amended to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." As amended, the Rule reads as follows:

> "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, *and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."*

(Emphasis added to indicate new language.) The Committee note further states as follows:

"The amendment does not distinguish between expert and lay *witnesses*, but rather between expert and lay *testimony*. Certainly it is possible for the same witness to provide both lay and expert testimony in a single case. The amendment makes clear that any part of a witness' testimony that is based upon scientific, technical, or other specialized knowledge within the scope of Rule 702 is governed by the standards of Rule 702 and the corresponding disclosure requirements of the Civil and Criminal rules."

192 F.R.D. 340, 416–17 (2000) (citations omitted).

Courts that have considered the question of whether the 2000 amendment was substantive in nature have concluded that the 2000 amendment merely clarified the correct interpretation of Federal Rule 701. *See, e.g., United States v. Garcia*, 291 F.3d 127, 139 n. 8 (2d Cir.2002) (noting the amendment "does not substantively change Rule 701. Indeed, the amendment serves more to prohibit the inappropriate admission of expert opinion under Rule 701 than to change the substantive requirements of the admissibility of lay opinion"); *People v. Stewart*, 55 P.3d 107, 123 n. 10 (Colo.2002) (en banc) (noting the amendment was added to eliminate confusion between Rules 701 and 702 and to clarify the distinction between expert and lay testimony). The Advisory Committee's note suggests that the use of Rule 701 to admit opinions based on specialized knowledge was "expedient," and analogizes witnesses who gave such opinions to the proverbial wolf in sheep's clothing. The amendment was necessary, according to the Committee, to "eliminate the risk that the reliability requirements set forth in Rule 702 [would] be evaded" under some courts' interpretations of Rule 701.

Some scholars have also taken this view. For example, David H. Kay, David E. Bernstein, and Jennifer L. Mnookin address the issue as follows:

"All witnesses who testify regarding scientific, technical, or other specialized knowledge should be considered experts

and subject to the special evidentiary and discovery rules that apply to experts. Some courts mistakenly interpreted the original version of Federal Rule of Evidence 701 and state equivalents as allowing lay testimony on technical issues.... Some courts held that under this rule 'a lay witness with first-hand knowledge can offer an opinion akin to expert testimony in most cases, so long as the trial judge determines that the witness possesses sufficient and relevant specialized knowledge or experience to offer the opinion.' Under this interpretation, courts dodged restraints on expert opinions by calling them lay opinions .... However, the proper interpretation of Rule 701—and the proper interpretation of analogous state rules—was that it did 'not permit a lay witness to express an opinion as to matters which are beyond the realm of common experience and which require the special skill and knowledge of an expert witness.' "

David H. Kaye, *et al.*, *The New Wigmore: Expert Evidence* § 1.7 at 39–40 (2004) (citations omitted).

The Supreme Court of Colorado considered the application of Colorado Rule 701 [6] as it applied to police officer testimony in *People v. Stewart*, 55 P.3d 107 (Colo.2002). The court adopted the more narrow interpretation of lay/expert witness testimony and the approach of the Federal Rules. In that case, a police officer who had not been qualified as an expert testified about the reconstruction of an automobile accident and to his opinion as to how the accident occurred. The court held that the trial court had abused its discretion in admitting the officer's expert testimony under the guise of lay opinion. *Id.* at 124.

---

**6.** Colorado Rule 701 is almost identical, with minor stylistic changes, to Maryland Rule 5–701, and states as follows:

"If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue."

The court noted that the application of Fed.R.Evid. 701 and its state equivalents to police officer testimony has generated much confusion and controversy. Following the lead of most federal courts, the court held that where an officer's testimony is based "not only on her perceptions and observations of the crime scene but also on her specialized training or education, she must be properly qualified as an expert before offering testimony that amounts to expert testimony." *Id.*

We think the better view in interpreting the rule regarding opinion testimony is the more narrow one, and the view as expressed in the amended Fed.R.Evid. 701. We also agree with the Court of Appeals for the Fourth Circuit and those courts that have found that by permitting testimony based on specialized knowledge, education, or skill under rules similar to Md. Rule 5–701, parties may avoid the notice and discovery requirements of our rules and blur the distinction between the two rules. Accordingly, we will follow the approach as reflected in the 2000 amendment to Fed.R.Evid. 701 and hold that Md. Rules 5–701 and 5–702 prohibit the admission as "lay opinion" of testimony based upon specialized knowledge, skill, experience, training or education.[7]

### III.

Turning now to the testimony in the instant case, it is clear that the State sought and received opinions from Officer Bledsoe and Detective Halter that were based on those witnesses' specialized knowledge, experience, and training. At the beginning of Officer Bledsoe's testimony, the prosecutor asked him to describe his training in the investigation of drug crimes. Bledsoe reported having attended "several drug recognition courses and training at the police academy, and several seminars," as well as a "drug school." The prosecutor asked Officer Bledsoe whether "based on [his] training and experience" the activity on Northwest Drive was "of signifi-

---

7. To the extent that our language in *Robinson v. State*, 348 Md. 104, 702 A.2d 741 (1997), suggests otherwise, it is hereby disapproved.

cance" to him, and then asked "what did you believe had occurred?" Although he denied that he was seeking an expert opinion, the prosecutor explained that Officer Bledsoe "brings to this like a mechanic who works on Mercedes, brings special knowledge about Mercedes. He brings special knowledge about drug deals and what these things bring."

Officer Bledsoe testified that "[i]n my opinion what occurred was the drug transaction." Asked what that opinion was based on, Bledsoe replied, "[b]ased on two temporary assignments in a narcotics unit; two and a half years with this unit; involved in well over 200 drug arrests." Detective Halter similarly testified to an extensive history of training and experience in the investigation of drug cases, and gave his opinion that the events on Northwest Drive constituted a drug transaction.

■ This testimony cannot be described as lay opinion. These witnesses had devoted considerable time to the study of the drug trade. They offered their opinions that, among the numerous possible explanations for the events on Northwest Drive, the correct one was that a drug transaction had taken place. The connection between the officers' training and experience on the one hand, and their opinions on the other, was made explicit by the prosecutor's questioning. Such testimony should have been admitted only upon a finding that the requirements of Md. Rule 5–702 were satisfied. In admitting the testimony under Md. Rule 5–701, the trial court abused its discretion.

The State contends that any error in the admission of Bledsoe and Halter's opinions was harmless. We disagree. In order for an error to be harmless, we must be convinced beyond a reasonable doubt that it in no way influenced the verdict. See *Weitzel v. State,* 384 Md. 451, 461, 863 A.2d 999, 1005 (2004); *Dorsey v. State,* 276 Md. 638, 659, 350 A.2d 665, 678 (1976).

■ The primary witness against Ragland was Paul Herring, an impeached witness, a participant in the alleged crime, and a witness testifying pursuant to a plea agreement with a

promised benefit from the State. The remaining evidence was circumstantial, and depended upon an inference that Herring had obtained his piece of crack cocaine from Ragland. To support this inference, the State relied in large part on the police officers' opinion testimony that the events on Northwest Drive had constituted a drug transaction. Under these circumstances, we cannot say beyond a reasonable doubt that this testimony did not contribute to the verdict.

*JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY REVERSED. CASE REMANDED TO THAT COURT FOR A NEW TRIAL. COSTS TO BE PAID BY MONTGOMERY COUNTY.*