873 A.2d 386

## Kobie MATOUMBA

v.

## STATE of Maryland.

## No. 562, Sept. Term, 2003.

Court of Special Appeals of Maryland.

April 28, 2005.

**42**

Francis A. Pommett, III, Baltimore, for appellant.

Kathryn Grill Graeff (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellee.

Panel MURPHY, C.J., SHARER, PAUL E. ALPERT (Retired, Specially Assigned) JJ.

SHARER, J.

Appellant, Kobie Matoumba, was convicted, following a bench trial in the Circuit Court for Baltimore City, of possession of a handgun by a person previously convicted of a crime of violence. He was sentenced to a mandatory term of five years imprisonment without parole, pursuant to Md.Code, Public Safety § 5–133(c)(2) (2003). In his appeal, appellant asserts that the circuit court erred in denying his motion to suppress, raising for our review three questions, which we have distilled to the following: [1]

> Did the motions court err in ruling that the arresting officers had reasonable articulable suspicion to search Matoumba's person, and probable cause to detain him following a traffic stop?

Finding no error, we shall affirm.

---

[1] As presented in his brief, appellant's questions are:

1. Whether the circuit court erred as a matter of law in holding the search of Mr. Matoumba did not violate his Fourth Amendment right against unreasonable search and seizure?

2. Whether the officer has a right to detain Mr. Matoumba at the scene since he did not had [sic] probable cause and Mr. Matoumba was not the focus of the traffic stop?

3. Whether the facts surrounding the circumstances of the search as adduced by Judge Miller was clearly erroneous?

## FACTUAL BACKGROUND

On July 18, 2002, at about 10:30 in the evening, Lieutenant Dean Palmero and Officer David Moynihan, of the Baltimore City Police Department, were on crime suppression detail in the west side of Baltimore. Palmero was the driver and Moynihan the passenger in an unmarked police cruiser. Palmero observed a Chevrolet Lumina traveling at a "greater than reasonable" speed. Their assessment of the speed of the vehicle was based on the fact that they were driving at the speed limit, and the Chevrolet was "pulling away" from them. As a result of their observations, they stopped the Lumina for the traffic violation.

Both Palmero and Moynihan exited the cruiser and approached the Lumina, Palmero to the driver's side, and Moynihan to the passenger side. It was Moynihan who observed appellant seated in the right rear passenger seat.

Moynihan testified about appellant's conduct during the time of the traffic stop, revealing that appellant (1) repeatedly looked back at the police cruiser while the officers were affecting the stop; (2) appeared to dip his right shoulder down toward the floor as Moynihan approached; (3) placed his right hand behind his back as Moynihan actually reached the rear passenger side;[2] (4) maintained constant eye contact with Moynihan; and (5) demonstrated visibly shaking hands when commanded to show them.

Eventually, all of the occupants were ordered out of the Lumina. Conducting a frisk of appellant, Moynihan discovered a loaded .25 caliber Browning handgun in appellant's back pants pocket.

## PROCEDURAL BACKGROUND

Appellant was charged with possession of a handgun after having been convicted of a crime of violence. On March 24, 2003, and April 10, 2003, the court conducted a hearing on

---

**2.** Appellant testified that he was holding a lighted cigarette in his right hand.

**44**

appellant's motion to suppress the handgun recovered from him. At the conclusion of the hearing, the court, in an oral opinion rendered from the bench, denied appellant's motion.

On May 5, 2003, appellant appeared before the court and entered a plea of not guilty, but stipulated to proceed on an agreed statement of facts. The State proceeded only on the charge of possession of a handgun by a person previously convicted of a crime of violence. On the agreed facts, appellant was found guilty, and on May 9, 2003, was sentenced to the mandatory five years imprisonment without parole. This timely appeal followed.

## DISCUSSION

### Standard of Review

Our review of the denial of appellant's motion to suppress evidence under the Fourth Amendment is limited to the record developed at the suppression hearing. *Dashiell v. State,* 374 Md. 85, 93, 821 A.2d 372 (2003) (quoting *State v. Collins,* 367 Md. 700, 706–07, 790 A.2d 660 (2002)). Moreover, we consider the record in the light most favorable to the State, the prevailing party on that motion. *State v. Green,* 375 Md. 595, 607, 826 A.2d 486 (2003); *Dashiell, supra,* 374 Md. at 93, 821 A.2d 372. Within this framework, we accept the circuit court's findings of fact where conflicting evidence is presented, unless those findings are clearly erroneous. *Id.; Conboy v. State,* 155 Md.App. 353, 361, 843 A.2d 216 (2004); *Charity v. State,* 132 Md.App. 598, 606, 753 A.2d 556 (2000). We shall, however, review the legal conclusions *de novo,* and, in doing so, make our own "independent constitutional determination" as to whether suppression of evidence is appropriate. *See Wengert v. State,* 364 Md. 76, 84, 771 A.2d 389 (2001).

### *Reasonable Articulable Suspicion*

The very core of appellant's argument is that Moynihan's frisk of him was in contravention of the Fourth Amendment, because the officer lacked a reasonable articulable suspicion.

 The Fourth Amendment of the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." US Const. amend. IV. Clearly, the Fourth Amendment "does not proscribe all state-initiated searches and seizures; [ ] merely ... those which are unreasonable." *Florida v. Jimeno,* 500 U.S. 248, 250, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). Within this context, the Supreme Court has held it permissible for a police officer to stop and briefly detain a person for an investigative purpose so long as the officer has a reasonable suspicion, supported by articulable facts, that criminal activity is occurring. *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

An obvious purpose of the *Terry* holding was to provide for the safety of the public generally and police officers specifically.[3] *Id.* Recognizing the danger posed by suspected criminals, the Supreme Court noted:

> [w]e cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for an arrest. When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.

*Id.* at 23–24, 88 S.Ct. 1868 (footnote omitted).

To facilitate the protective frisk, the Court added

---

**3.** The Supreme Court recognized that "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous ... he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him." *Terry, supra,* 392 U.S. at 30, 88 S.Ct. 1868.

[t]here must be narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, when he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or "hunch", but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.

*Id.* at 27, 88 S.Ct. 1868 (citations omitted).

 The Supreme Court has defined the "reasonable suspicion" standard as requiring a "particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). Thus, reasonable suspicion is more than a "hunch", but it is a "less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000); *See Nathan v. State*, 370 Md. 648, 663, 805 A.2d 1086 (2002). In analyzing whether reasonable suspicion existed in a particular circumstance, courts must not "parse out each individual circumstance for separate consideration." *Ransome v. State*, 373 Md. 99, 104, 816 A.2d 901 (2003) (citing *United States v. Arvizu*, 534 U.S. 266, 274, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002)). Rather, the courts must view and consider the "totality of the circumstances." *United States v. Sokolow*, 490 U.S. 1, 8, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). When viewing through the totality lens, courts should be mindful that otherwise innocent behavior may indeed constitute reasonable suspicion. *Nathan*, 370 Md. at 663, 805 A.2d 1086 (citing *Sokolow, supra*, 490 U.S. at 9–10, 109 S.Ct. 1581).

In contending that the trial court erred in failing to find that the frisk violated his Fourth Amendment rights, appellant makes three arguments. First, appellant contends that no objectively reasonably prudent person in Moynihan's position would have believed that appellant was armed. Second, and irrespective of the reasonableness of the search, appellant argues that neither Moynihan nor Palmero was qualified as an expert witness. Therefore, he posits, neither could testify as to his belief that the particular facts justified a search. Finally, appellant contends that the motions court erroneously weighed witness credibility in favor of the State in the face of a conflict in testimony between appellant and the State's witnesses, the police officers. We address each argument in turn.

### The Reasonably Prudent Person

Appellant contends first that no reasonably prudent person would have believed him to have been armed. In support of his contention, appellant cites *Ransome v. State*, 373 Md. 99, 816 A.2d 901 (2003), in which the Court of Appeals held that a frisk of the defendant was improper on the ground that reasonable suspicion was lacking. *Id.* at 111, 816 A.2d 901.

Given appellant's reliance on *Ransome*, we pause to examine the facts of that case. In *Ransome*, police officers were on night patrol in an unmarked cruiser. *Id.* at 100–101, 816 A.2d 901. The area through which they were patrolling was notorious for drug dealing, discharging of weapons, and loitering. On the night of the frisk, officers on patrol were looking for "loitering group" behavior. They noticed Ransome with another man standing on the sidewalk, and observed that he had a large bulge in his left front pants pocket. Proceeding on that observation, the officers confronted Ransome. After a series of questions, and the observation of what one officer characterized as "a nervous defendant," the officer patted him down, discovering narcotics. After further search, the bulge was revealed to be a roll of coins. No weapon was found. *Id.*

Superficial similarities exist between *Ransome* and the case *sub judice*. For instance, like Ransome, appellant (1) was out

at night; (2) present in a high crime area; (3) approached by police officers; (4) demonstrated a palpably nervous appearance; (5) looked at police officers; and (6) displayed signs consistent with concealment of a weapon. A distinguishing detail is that appellant was present in a vehicle stopped for a legitimate traffic violation.[4]

Thus, unlike Ransome, appellant was not simply walking down the street minding his own business. The distinction is of paramount importance. Indeed, the Court of Appeals has recognized:

> If the police can stop and frisk any man found on the street in a high crime area merely because he has a bulge in his pocket, stops to look at an unmarked car containing three uniformed men, and then, when those men alight suddenly from the car and approach the citizen, acts nervously, there would indeed be little Fourth Amendment protection left for those men who live in or have occasion to visit high crime areas.

*Ransome, supra,* 373 Md. at 111, 816 A.2d 901. Ransome was wrongfully detained; appellant was rightfully detained. Moreover, appellant here, unlike Ransome, took, as the State characterizes, "evasive action." As such, *Ransome* is factually distinguishable and, consequently, offers appellant no comfort.

Our attention has been drawn to *United States v. Hassan El,* 5 F.3d 726 (4th.Cir.1993), a case factually apposite to the case before us. In *Hassan El,* police officers stopped a vehicle, in which the defendant was a passenger, for the driver's failure to stop at a stop sign. *Id.* at 728. While at the vehicle, one of the officers observed that Hassan El appeared nervous and uncomfortable. The officer then noticed a bulge in the defendant's pants and asked him if he was carrying a gun. Hassan El, according to the police, grew visibly more

---

4. Appellant gives significant weight to the fact that, like the frisk of Ransome, the frisk in the case *sub judice* began at an area on the person different than that which gave rise to suspicion of weapon concealment. This fact, however, is immaterial to the question of whether reasonable articulable suspicion existed to conduct the initial frisk.

uncomfortable by the question. As the defendant appeared to be bringing his hands up toward the bulge, the officer grabbed the bulge through the window, revealing a loaded .38 caliber handgun. *Id.* The Fourth Circuit held that this search did not violate the Fourth Amendment. *Id.* at 731. We need not particularize the obvious similarities of *Hassan El* and the case *sub judice.* Appellant's suggestion that *Hassan El* is not worthy of our consideration is without merit.

The State, recalling that this Court has previously dealt with the issue of a passenger pat-down following a valid traffic stop, refers us to *Russell v. State,* 138 Md.App. 638, 773 A.2d 564 (2001), to demonstrate the reasonableness of Moynihan's conduct. Russell was arrested after police stopped the car, in which he was a passenger, for a traffic violation. *See Russell, supra,* 138 Md.App. at 644, 773 A.2d 564. During the stop, the officer asked the driver for a valid driver's license, only to learn that the driver did not have a license. The officer then turned to Russell, who was seated in the passenger seat, and asked for his license. The purpose of the inquiry was to determine whether Russell was eligible to drive the auto away after the completion of the traffic stop. *Id.*

Russell became extremely nervous, as demonstrated by his looking around and fidgeting. He began to breathe more heavily and swallow very hard. He appeared to search his pockets, pull an item out, and then place it back in his pocket. The officer believed the jacket pocket from which defendant pulled the item was large enough to conceal a weapon. Given that the stop occurred in an area of high drug trafficking and use of weapons, and Russell's extremely nervous behavior, the officer requested that he exit the vehicle. Russell complied but, while outside, became uncooperative. Immediately prior to the pat-down, Russell reached into his pocket, retrieved a gun, and threw it onto the passenger seat.

Recognizing that traffic stops may be "fraught with danger," this Court held that the officer in *Russell* had reasonable articulable suspicion to detain defendant and conduct a pat-down. *Russell, supra,* 138 Md.App. at 653–54, 773 A.2d 564.

We took into account the following important circumstances. First, the area of the stop was known to be dangerous. Second, Russell exhibited extremely nervous conduct. Finally, while looking through his pockets, it appeared to the officer that Russell was attempting to conceal some item. Id. at 653, 773 A.2d 564.

*Russell* is persuasive, if not actually controlling, of our consideration of this appeal. We conclude, based on the totality of the circumstances, that Moynihan had reasonable articulable suspicion to frisk Matoumba. In arriving at this conclusion, we give due weight to appellant's nervous conduct and obvious attempt to conceal some item behind his back, the dangerous nature of the area where the traffic stop occurred, and the initial reasonableness of the stop. Given these facts, Moynihan operated on more than a "hunch" of danger. Indeed, these facts would surely warrant a prophylactic frisk to assure public and police officer safety. Our conclusion is consistent with the safety objective of *Terry*.

### Opinion Evidence

 Appellant's second argument, that the court ought not to have received the testimony of Moynihan and Palmero because they were not qualified as expert witnesses, is of no avail. Appellant, in essence, suggests that officers need to be qualified as expert witnesses in order to render an opinion on the basis for which they conduct a pat-down or frisk. Appellant cites Md. Rule 5–702, pertaining to the admissibility of expert testimony, in support of this contention and, at oral argument, asserted that such requirement has a foundation in *Terry v. Ohio, supra.*[5]

---

**5.** "Expert testimony may be admitted, in the form of an opinion or otherwise, if the court determines that the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. In making that determination, the court shall determine (1) whether the witness is qualified as an expert by knowledge, skill, experience, training, or education (2) the appropriateness of the expert testimony on the particular subject, and (3) whether a sufficient factual basis exists to support the expert testimony." Md. Rule 5–702 (2003).

We find nothing in Rule 5–702, Maryland case law, or *Terry* that could be remotely construed to mandate that a police officer be qualified as an expert in order to render an opinion on his or her basis for reasonable articulable suspicion to conduct a pat-down. We decline appellant's invitation to impose such an evidentiary requirement.

To the contrary, Md. Rule 5–701 controls the testimony of a police officer as to his or her reasonable articulable suspicion. Rule 5–701 provides:

> If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue.

Within the context of 5–701, Maryland courts have, in the past, observed that "the specialized training, experience, and professional acumen of law enforcement officials often justify permitting a police officer to offer testimony in the form of a lay opinion." *Robinson v. State*, 348 Md. 104, 120, 702 A.2d 741 (1997). Indeed, "to restrict such testimony to underlying factual observations would often deprive the trier of fact of the necessary benefit of the percipient mind's prior experiences." *Id.* Certainly, "[p]olice officers are permitted to express opinions, whether regarded as expert or non-expert, based on their training and experience[.]" *Tu v. State*, 97 Md.App. 486, 501, 631 A.2d 110 (1993).

## *Ragland v. State* [6]

However, *Robinson* and *Tu* have recently been narrowed, if not abrogated, by the Court of Appeals in *Ragland v. State.* In *Ragland*, the Court discussed the confluence of Md. Rule 5–701 (lay opinion) and Md. Rule 5–702 (expert opinion). Heretofore, as the Court noted, lay witnesses, under a broad

---

**6.** *Ragland v. State*, 385 Md. 706, 870 A.2d 609 (2005) (Filed March 18, 2005).

view, were permitted to offer opinions based "upon specialized knowledge or training so long as the testimony is rationally based on the personal perception of the witness." *Ragland,* Slip Op. at 16. In contrast, a narrower view holds that lay witnesses may not offer testimony based on scientific, technical, or specialized knowledge that falls within the scope of Md. Rule 5–702.

In *Ragland,* two police officers were permitted to testify, as lay witnesses, to their opinions that the activity seen by them, involving Ragland, was a "drug transaction." The officers were neither proffered nor qualified as expert witnesses.

Particularly, the officers had observed a known drug user place calls from two separate public telephones and thereafter drive to a certain place. There, he participated in a hand-to-hand transaction with a person in the front passenger seat of a vehicle. Neither officer was able to see the face of the person in the vehicle, or what changed hands. Shortly thereafter, the vehicle was stopped and the occupants were arrested. Ragland was located in the front passenger seat of the vehicle.

At trial, over objection, both officers opined, based on their training and experience, that what they had observed was a "drug transaction." The opinions were admitted as lay opinions. The Court of Appeals disagreed, characterizing the testimony as expert opinions by witnesses who had not been identified in discovery as experts, and had not been qualified at trial as experts.

Acknowledging that *Robinson v. State, supra,* was being revisited, the Court said:

> We think the better view in interpreting the rule regarding opinion testimony is the more narrow one.... We also agree with the Court of Appeals for the Fourth Circuit and those courts that have found that by permitting testimony based on specialized knowledge, education, or skill under rules similar to Md. Rule 5–701, parties may avoid the notice and discovery requirements of our rules and blur the distinction between the two rules. Accordingly, ... we hold that Md. Rules 5–701 and 5–702

prohibit the admission as "lay opinion" of testimony based upon specialized knowledge, skill, experience, training or education.

*Ragland,* 385 Md. at 725, 870 A.2d 609.

Turning to the facts at hand, and given the holding of *Ragland,* Moynihan and Palmero rendered what we conclude to be admissible lay opinions of their reasonable articulable basis for frisking appellant. Both Moynihan and Palmero had ample opportunity to observe appellant's conduct, body movements, and response to their questions. Their testimony related to their own perception of events and their rational inferences drawn from that perception, not on scientific, technical, or specialized knowledge. They reacted based upon their observations, not upon a visceral reaction to events, the factual basis of which were not known to them with specificity. Their testimony was admissible, without qualification for expertise, under Md. Rule 5–701.

### Credibility of Witnesses

Appellant's final argument is that the trial court gave clearly erroneous weight to the testimony of Moynihan and Palmero. Specifically, appellant suggests that the trial court committed clear error in believing the testimony of the police officers, rather than his own contradictory testimony.

When reviewing the evidence of the suppression record, we "extend great deference to the hearing judge's fact finding in respect to determining the witnesses' credibility and weighing and determining first-level facts." *Farewell v. State,* 150 Md.App. 540, 562 n. 5, 822 A.2d 513 (2003) (citing *Perkins v. State,* 83 Md.App. 341, 346, 574 A.2d 356 (1990)). Indeed, this Court has duly recognized that

an appellate court can reject the testimony of a witness credited by the triers of the fact only when the testimony is inherently improbable. There must exist a physical impossibility that the statements of the witness are true or their falsity must appear without resorting to inferences or deduction. The appellate court may not substi-

tute its judgment with respect to the credibility of a witness for that of the ... trial judge on the ground that the evidence is inherently improbable unless it is so clearly false and unbelievable that reasonable minds may not differ.

*Borgen v. State,* 58 Md.App. 61, 79–80, 472 A.2d 114, *cert. denied,* 300 Md. 483, 479 A.2d 372 (1984).

The crux of appellant's argument is that his testimony, in contradiction to that of the officers, *must* be the correct version of the events that night. He cites testimonial discrepancies relating to the order in which he and fellow passengers exited the vehicle and the nature of his right-hand movements. Even were we to conclude that appellant's version was the more accurate one, we would conclude that the discrepancies bear little upon the issue of reasonable articulable suspicion. Regardless of whether appellant held a cigarette in his hand, the act of placing his hand behind his back is sufficient to create suspicion. Moreover, Moynihan's sense of suspicion was developed even before appellant's exit of the vehicle. To us, any discrepancy in the order in which the parties left the auto is immaterial to whether Moynihan developed a reasonable articulable suspicion prior to the exit.

Nothing in the record, when viewed in the light most favorable to the State, persuades us that Moynihan and Palmero offered improbable or clearly false testimony. The testimony presented a quintessential credibility assessment potential. The motions court resolved the question by stating, with respect to Moynihan's testimony, "I find that testimony to be credible." In sum, the court believed Moynihan and not appellant. There is no authority that would require it to do otherwise. Deferring to the trial court's justifiable credibility assessment, as we must, we find no error.

**JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED; COSTS ASSESSED TO APPELLANT.**