53 A.3d 449

**Garrett Maurice MORELAND**

v.

**STATE of Maryland.**

**No. 1360, Sept. Term, 2010.**

Court of Special Appeals of Maryland.

Sept. 26, 2012.

**564**

Peter F. Rose (Paul B. Dewolfe, Public Defender, on the brief) Baltimore, MD, for Appellant.

James E. Williams (Douglas F. Gansler, Atty. Gen., on the brief) Baltimore, MD, for Appellee.

Panel: EYLER, DEBORAH S., KEHOE and IRMA S. RAKER (Retired, Specially Assigned), JJ.

EYLER, DEBORAH S., J.

After a jury trial in the Circuit Court for Anne Arundel County, Garrett Maurice Moreland, the appellant, was convicted of three counts of armed robbery; three counts of robbery; use of a handgun in the commission of a felony; use of a handgun in the commission of a crime of violence; wearing, carrying, and transporting a handgun; and conspiracy to commit robbery with a dangerous and deadly weapon. He was sentenced to five years' imprisonment without the possibility of parole for the use of a handgun in the commission of a crime of violence conviction; 20 years' imprisonment, with all but five years suspended, for the conspiracy conviction and for each of the three armed robbery convictions, to be served concurrent to the sentence for use of a handgun; and three years' imprisonment for the wearing, carrying, and transporting a handgun conviction, also to be served concurrent to the five-year sentence imposed for the use of a handgun conviction. The court also imposed a period of five years' supervised probation. The remaining convictions were merged for sentencing.

On appeal, the appellant presents one issue for our consideration: Did the trial court err in admitting the testimony of the appellant's "cousin," Eric Owens, that the image captured on the Bank of Annapolis's surveillance video was that of the appellant? Finding no error, we shall affirm the judgments of the circuit court.

## FACTS AND PROCEEDINGS

This appeal arises out of the October 2, 2009 robbery of a branch of the Bank of Annapolis in Edgewater. At about 11:00 a.m. that day, Vadus Traylor, the bank's branch manager, was sitting at her desk when she saw a man wearing a ski hat and dark sunglasses enter the bank. Ms. Traylor pressed an alarm button because the man "just didn't look like a

normal customer coming in." The man, whom Ms. Traylor identified as the appellant, "was a black gentleman, probably 5'9", kind of very stocky," with a "wide nose," "distinct jaw line," and "a little bit of a moustache." Ms. Traylor estimated that he was in his late 30s or early 40s. He was wearing a dark blue fleece jacket. A few minutes later, another man, wearing a hat, sunglasses, and a royal blue fleece jacket, entered the bank. At the time the appellant and the second man entered the bank, the lock on the door to the teller line was broken and a repairman was working on it. As a result, the door was propped open.

Ms. Traylor's instincts were borne out when the appellant brandished a gun with a silver barrel. He paced the lobby floor of the bank while displaying the gun. The second man approached the open teller line door, saying, "We can make this quick. Let's get it over with." Judy O'Neill, a bank employee, stepped out of her office and the second man "put her down on the floor." The second man also forced the repairman down on the floor and went behind the teller line. The second man pulled out a white plastic bag and went through each teller's drawer pulling out cash and stuffing it in the bag. When the second man got to the last drawer, the appellant "started getting a little uptight" and said, "Come on. Come on. We have to go. It's time to go. Come on."

After they had removed the money from all the drawers, the two men exited the branch. Ms. Traylor saw the second man remove his gloves and stuff the money inside his fleece jacket. According to Ms. Traylor, the appellant was not wearing gloves. She stated that the entire event lasted only two and a half minutes and that "just under $15,000.00" was taken from the bank.

Ms. Traylor gave the police a thumb drive containing a video recording of the robbery from the bank's surveillance cameras. At trial, she reviewed images from the video recording and still photographs made from the recording and identified the appellant as the person shown in the bank lobby.

Matthew Marceron, a customer in the bank at the time of the robbery, and three bank tellers, Linda Hayden, Stacy Blevins, and Lisa Dunay, gave similar testimony about the robbery. Each identified the appellant as the man who stayed in the lobby area of the bank holding a silver gun. Each bank teller gave slightly different testimony about the appellant's height, but placed him between five feet eight inches and five feet ten inches tall. This testimony conflicted with the height given on the appellant's Motor Vehicle Administration record, which states that he is five feet, four inches tall.

Anne Arundel County Police Detective Norval Cooper was the primary investigator of the robbery. He interviewed witnesses, reviewed the video recorded by the bank's surveillance cameras, and obtained still photographs from the video recording. Detective Cooper provided the still photographs to a public information officer. About five days after the robbery, Detective Cooper had a telephone conversation with Eric Owens about a possible suspect. As a result of that conversation, Detective Cooper gathered information, including photographs of the appellant.

Eric Owens testified that he has known the appellant, whom he refers to as Gary, for 40 to 45 years. They grew up and went to school together. Although Owens is not related to the appellant by blood, he refers to the appellant as his "cousin." Owens testified that he had last seen the appellant "four or more" years prior to the trial. According to Owens, the appellant's appearance had changed during that time. Owens testified that, at the time of trial, the appellant did not look healthy and appeared to have lost about 20 to 25 pounds. Also, the appellant seemed to be paralyzed, which had not been his condition before. Owens estimated that the appellant was about five feet, four inches tall. He stated that Detective Cooper showed him some photographs and the video recording of the bank robbery, and Owens identified the appellant as one of the robbers.

We shall include additional facts as necessary in our discussion of the issue presented.

### DISCUSSION

Eric Owens is employed as a police officer. He was not involved in the investigation of the subject robbery, however. At trial, defense counsel sought to preclude the State from calling Owens to testify that, after viewing the bank's surveillance video of the robbery and still photographs made from it, it was his opinion that the appellant was one of the people who perpetrated the bank robbery. Defense counsel argued that it was for the jury to decide whether the appellant was one of the people shown in the video and Owens's lay-opinion testimony was irrelevant and improperly invaded the province of the jury. Alternatively, defense counsel argued that, even if the testimony was relevant, its prejudicial effect outweighed its probative value because Owens is a police officer and in any event his testimony was cumulative.

The court ruled that Owens could testify, stating, "If someone's able to recognize them, they're able to recognize them, provided that there's some foundation laid and it's a reasonable foundation that a person knows, or has reason to know, who they're viewing in a video." The court prohibited Owens from appearing in court in his police uniform and from being identified to the jury as a police officer.

Thereafter, Owens testified that, after viewing the video recording and a still photograph, he had told Detective Cooper that the appellant was one of the robbers. Owens was shown a still photograph, admitted into evidence as State's Exhibit 2A, and identified the individual depicted in the photograph as the appellant.

The admissibility of evidence ordinarily is left to the sound discretion of the trial court. Md. Rule 5–104(a) ("[p]reliminary questions concerning ... the admissibility of evidence shall be determined by the court...."); *State v. Simms*, 420 Md. 705, 724–25, 25 A.3d 144 (2011) (and cases cited therein); *Myer v. State*, 403 Md. 463, 476, 943 A.2d 615 (2008); *Hendrix v. Burns*, 205 Md.App. 1, 29, 43 A.3d 415 (2012), *cert. denied*, 427 Md. 608, 50 A.3d 607 (2012). We will not disturb a trial court's evidentiary ruling unless " 'the

evidence is plainly inadmissible under a specific rule or principle of law or there is a clear showing of an abuse of discretion.' " *Decker v. State*, 408 Md. 631, 649, 971 A.2d 268 (2009) (quoting *Merzbacher v. State*, 346 Md. 391, 405, 697 A.2d 432 (1997)). A court's decision is an abuse of discretion when it is " 'well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable.' " *Gray v. State*, 388 Md. 366, 383, 879 A.2d 1064 (2005) (quoting *Dehn v. Edgecombe*, 384 Md. 606, 628, 865 A.2d 603 (2005)).

Rule 5–401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Generally, relevant evidence is admissible and evidence that is not relevant is not admissible. Md. Rule 5–402.[1,2]

■ The appellant contends that Owens's testimony identifying him on the bank surveillance video and from a photograph taken from the video was irrelevant and also was inadmissible lay opinion testimony under Rule 5–701. That rule provides:

> If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue.

---

**1.** Maryland Rule 5–402 provides: "Except as otherwise provided by constitutions, statutes, or these rules, or by decisional law not inconsistent with these rules, all relevant evidence is admissible. Evidence that is not relevant is not admissible."

**2.** Pursuant to Rule 5–403, however, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence."

In *Ragland v. State*, 385 Md. 706, 717, 870 A.2d 609 (2005), the Court of Appeals discussed the type of testimony that historically has been considered to be lay opinion under Federal Rule of Evidence 701, which except for minor stylistic differences, is identical to Maryland Rule 5–701. The Court explained:

> Lay opinion testimony is testimony that is rationally based on the perception of the witness. The United States Court of Appeals for the Third Circuit offered a helpful explanation of lay opinion testimony in *Asplundh Mfg. Div. v. Benton Harbor Eng'g*, 57 F.3d 1190 (3rd Cir.1995), a case cited favorably in the Advisory Committee's note to the 2000 amendment to Fed.R.Evid. 701, discussed *infra*. The court stated as follows:
>
>> "The prototypical example of the type of evidence contemplated by the adoption of Rule 701 relates to the appearance of persons or things, identity, the manner of conduct, competency of a person, degrees of light or darkness, sound, size, weight, distance, and an endless number of items that cannot be described factually in words apart from inferences. . . . Other examples of this type of quintessential Rule 701 testimony include identification of an individual, the speed of a vehicle, the mental state or responsibility of another, whether another was healthy, the value of one's property."

*Id.* at 717–18, 870 A.2d 609. The *Ragland* Court held that "Md. Rules 5–701 and 5–702 prohibit the admission as 'lay opinion' of testimony based upon specialized knowledge, skill, experience, training or education." *Id.* at 725, 870 A.2d 609 (footnote omitted). The Court recognized that, "by permitting testimony based on specialized knowledge, education, or skill under ... Md. Rule 5–701, parties may avoid the notice and discovery requirements of our rules and blur the distinction between the two rules." *Id.*

In *Washington v. State*, 179 Md.App. 32, 943 A.2d 704, *rev'd on other grounds*, 406 Md. 642, 961 A.2d 1110 (2008), we addressed whether a trial court improperly allowed a police detective, who was not present at the shooting at issue, to

imply repeatedly that a person in a videotape and in still photographs made from the videotape was the defendant. In addressing lay opinion testimony, we observed that "[p]ermissible lay opinion testimony generally falls into one of two categories." *Id.* at 56, 943 A.2d 704. "The first category is 'where it is impossible, difficult, or inefficient to verbalize or communicate the underlying data observed by the witness.' " *Id.* (quoting *Robinson v. State,* 348 Md. 104, 119, 702 A.2d 741 (1997) and citing *Brown v. Rogers,* 19 Md.App. 562, 568–69, 313 A.2d 547 (1974)).[3] "The second category is when 'the lay trier of fact lacks the knowledge or skill to draw the proper inferences from the underlying data.' " *Id.* (quoting *Robinson,* 348 Md. at 120, 702 A.2d 741 (citing Edward J. Imwinkelried, *Evidentiary Foundations* 241 (3rd ed.1995))).

We went on to note that courts in other jurisdictions have addressed "the admissibility of witness testimony explicitly identifying an individual pictured in a photograph or videotape as the defendant." *Washington,* 179 Md.App. at 60, 943 A.2d 704. One of the cases we cited, *Robinson v. Colorado,* 927 P.2d 381 (Colo.1996), is very similar to the case at bar. In *Robinson,* the robbery of a convenience store was recorded by the store's surveillance camera. A police officer who viewed the video recording recognized Robinson as the perpetrator because he had had a previous encounter with him. At Robinson's trial, the jury was shown the videotape and still

---

**3.** In *Ragland,* 385 Md. 706, 870 A.2d 609, the Court of Appeals disapproved, in part, its decision in *Robinson v. State,* 348 Md. 104, 702 A.2d 741 (1997). *Ragland* involved the "lay opinion" testimony of two police officers that, based on their police training and experience, a particular series of events constituted a drug transaction. *Id.* at 710–714, 870 A.2d 609. The defendant argued that the officers' testimony was expert opinion testimony, not lay opinion testimony, and was inadmissible because the State had not identified the officers as experts pretrial, had not provided appropriate discovery, and had not qualified the officers to testify as experts. *Id.* at 715–716, 870 A.2d 609. The Court of Appeals agreed, holding, as discussed above, that Rules 5–701 and 5–702 "prohibit the admission as 'lay opinion' of testimony based upon specialized knowledge, skill, experience, training or education." *Id.* at 725, 870 A.2d 609 (footnote omitted). The Court noted that, to the extent language in *Robinson* suggested otherwise, it was disapproved. *Id.* at 725 n. 7, 870 A.2d 609.

photographs made from the videotape. The police officer testified, identifying Robinson as the person shown committing the robbery in the videotape and the photographs made from the videotape.

On appeal, Robinson argued that the police officer's "lay opinion testimony was not helpful to the jury because the detective was in no better position than the jury to determine whether the robber in the videotape was Robinson." *Id.* After surveying cases from other jurisdictions pertaining to the admission of lay opinion testimony, the court observed that a "significant majority" of the courts that had addressed the issue had determined that "a lay witness may testify regarding the identity of a person depicted in a surveillance photograph if there is some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than the jury." *Id.* The court went on to explain, in part:

> All of the courts among the majority agree that a lay witness who has substantial familiarity with the defendant, such as a family member or a person who has had numerous contacts with the defendant, may properly testify as to the identity of the defendant in a surveillance photograph. Moreover, several jurisdictions agree that whether a lay witness' prior contacts with the defendant are extensive enough to permit a proper identification is a matter of weight for the jury, not admissibility.

*Id.* at 383 (internal citations omitted).

The Colorado court adopted the majority rule. It explained that "the intimacy level of the witness' familiarity with the defendant goes to the weight to be given the witness' testimony, not the admissibility of such testimony." *Id.* at 384. It rejected the argument that a change in the defendant's appearance between the time of the photograph and the time of trial was necessary for the admission of the lay opinion identification testimony, stating that, "although the witness must be in a better position than the jurors to determine whether the image captured by the camera is indeed that of

the defendant, this requires neither the witness to be 'intimately familiar' with the defendant nor the defendant to have changed his appearance." *Id.*

■ We find the reasoning of the Colorado Supreme Court to and the majority rule on this issue be sound. Contrary to the appellant's contention in the instant case, Owens's lay opinion testimony was not based on speculation or conjecture, and did not amount to a mere conclusion or inference that the jury was capable of making on its own. Owens had substantial familiarity with the appellant and intimate knowledge of his appearance prior to the time of the robbery, having known him for 40 to 45 years. That long-term relationship made Owens better able to identify the appellant in the video recording and still photographs than the jurors would be. His years of familiarity with the appellant also provided a basis for his testimony that the appellant's appearance had changed between the time of the robbery and the trial, including that he had lost weight and was exhibiting the physical symptoms of a paralysis that he had not exhibited before. Owens's testimony was rationally based on his own perception of the appellant over a 40–to 45–year period and was helpful to the jury for a clear understanding of the change in the appellant's appearance. The fact that Owens had not seen the appellant in four years went to the weight of his testimony, not its admissibility. Moreover, Owens's lay opinion testimony identifying the appellant plainly was relevant, as it tended to show that the appellant was the bank robber holding the gun, a central issue in the case.

■ Quoting *United States v. Jackman,* 48 F.3d 1, 5 (1st Cir.1995), the appellant also contends that "even when the witness is familiar with the defendant, lay opinion testimony concerning the identity of the person depicted in a surveillance photograph is not admissible when the photograph is 'so hopelessly obscure that the witness is no better-suited than the jury to make the identification.'" That argument is without merit. There is absolutely nothing in the record to

suggest that either the video recording or the still photographs made from the recording were obscure.

**JUDGMENTS OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED. COSTS TO BE PAID BY THE APPELLANT.**